ORAL ARGUMENT NOT SCHEDULED

# IN THE DISTRICT COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| LAKE CARRIERS' ASSOCIATION, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | Case No. 25-1027 |
| | ) | |
| U.S. ENVIRONMENTAL | ) | (Consolidated with |
| PROTECTION AGENCY and | ) | Nos. 25-1049 and |
| LEE ZELDIN, Administrator, | ) | 25-1052) |
| U.S. Environmental Protection Agency | ) | |
| | ) | |
| *Respondents.* | ) | |

**ENVIRONMENTAL PETITIONERS' OPPOSITION TO EPA'S MOTION TO HOLD CASE IN ABEYANCE AND FOR EXTENSION OF TIME**

Environmental Petitioners[1] respectfully urge the Court to deny the motion of Respondent U.S. Environmental Protection Agency ("EPA") to hold the consolidated petitions for review in abeyance for six months and to extend EPA's time to reply to Environmental Petitioners' motion to intervene in the Petition filed by the Lake Carriers' Association. The three consolidated petitions for review challenge the *Vessel Incidental Discharge National Standards of Performance*, 89

---

[1] Environmental Petitioners are Alliance for the Great Lakes ("AGL"), Environmental Law & Policy Center ("ELPC"), Minnesota Environmental Partnership ("MEP"), and National Wildlife Federation ("NWF").

1

Fed. Reg. 82,074 (Oct. 9, 2024) ("Rule"), which was promulgated pursuant to the 2018 Vessel Incidental Discharge Act ("VIDA"), *see* 33 U.S.C. § 1322(p).

The Rule creates standards of performance for living organisms in vessels' ballast water discharge to reduce the risk that invasive species will spread and become established through ballast water discharge. *See* 89 Fed. Reg. 82092, 82095. However, the Rule exempts existing vessels that operate exclusively on the Great Lakes and St. Lawrence River ("Lakers") from regulation, which threatens the health of the Great Lakes and allows Lakers to continue spreading invasive species throughout the Great Lakes. *See* 40 C.F.R. § 139.10(d)(3)(vi).

Environmental Petitioners filed their Petition to challenge the Rule's exemption of Lakers. Also, Environmental Petitioners moved to intervene in support of Respondents in the Petition filed by Lake Carriers' Association, the trade association for companies that own and operate Lakers. *See* Motion of Environmental Organizations for Leave to Intervene in Support of Respondents, *Lake Carriers' Ass'n v. Env't Prot. Agency*, (D.C. Cir. Feb. 18, 2025) (Case No. 25-1027) (Doc. No. 2101207) ("Motion to Intervene"). These consolidated actions should proceed in the regular course with no further delay.

*First*, EPA's proposal for a six-month abeyance is not warranted. EPA "bears the burden of establishing its need" for the abeyance, but failed to do so in its motion. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Further, because EPA's

proposed six-month stay would prejudice the Environmental Petitioners, EPA must "make out a clear case of hardship or inequity in being required to go forward," but it has not done so. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Environmental Petitioners would be prejudiced by a six-month abeyance. Such an abeyance would further delay adjudication over proper regulation of Lakers' ballast water discharges, risk spreading invasive species in the Great Lakes, and delay the effective date of a revised rule to adequately regulate Lakers.

EPA failed to establish its need for an abeyance. As an initial matter, the Trump administration was extensively involved with the Rule. It was promulgated pursuant to VIDA, which President Trump signed into law in 2018. And, President Trump's first administration issued the Notice of Proposed Rulemaking for the Rule. *See Vessel Incidental Discharge National Standards of Performance*, 85 Fed. Reg. 67,818 (Oct. 26, 2020). Also, while EPA asserts it "could take further action that may obviate the need for judicial resolution," in fact, the Trump administration has not ordered EPA to review the Rule. *See* EPA's Motion to Hold Case in Abeyance and for Extension of Time, *Lake Carriers' Ass'n v. Env't Prot. Agency*, (D.C. Cir. Feb. 20, 2025) (Case No. 25-1027) (Doc. No. 2101783) ("EPA Abeyance Motion") at 4. And, the abeyance orders that EPA cites are distinguishable and allow only for far shorter abeyance periods.

3

*Second*, the Court should reject EPA's request to extend its deadline to respond to Environmental Petitioners' Motion to Intervene to ten days after the Court rules on EPA's abeyance motion or ten days after any abeyance is lifted, whichever is later. *See* EPA Abeyance Motion at 1–2. Given the Trump administration's experience with this Rule, such an extension for EPA to respond to Environmental Petitioners' intervention motion is not warranted. While Environmental Petitioners would not be opposed to granting EPA a brief extension for their response deadline if needed, the deadline should not be tied to this Court's ruling on EPA's abeyance motion, which lacks merit.

## BACKGROUND

Invasive species pose substantial threats to aquatic ecosystem health, habitats, and food webs and cause major socioeconomic harms by damaging fisheries, infrastructure, and water-based tourism. 89 Fed. Reg. 82079. The Great Lakes are particularly impacted by invasive species. Many invasive species, like the zebra mussel and ruffe, have become established already and cause over $100 million of damage annually in the Great Lakes region. U.S. EPA, *Economic Analysis of New Lakers for the Supplemental Notice of Proposed Rulemaking for the Vessel Incidental National Standards of Performance* (2023), Docket ID No. EPA-HQ-OW-2019-0482-0889 (hereinafter "Economic Analysis of New Lakers")

at 19. There are already 64 invasive species with known negative environmental and socioeconomic impacts established in the Great Lakes. *Id.*

Vessels can cause invasive species to become established or to further spread through their ballast water discharge. *See* 89 Fed. Reg. 82091. Lakers are a high risk for spreading invasive species between the Great Lakes due to their large quantities of ballast water, frequent discharge events, and short voyages. *See* Economic Analysis of New Lakers at 20. Lakers have discharged invasive species in their ballast water into Great Lakes ports where those invasive species were previously unreported. *See* Great Waters Research Collaborative, *Great Lakes Ship Ballast Monitoring Project Technical Report* (2018), Docket ID No. EPA-HQ-OW-2019-0482-0181.

Ballast Water Management Systems ("BWMS") can be installed onto vessels to kill living organisms that are present in ballast water before the water is discharged to a new port. Shipboard testing of BWMS on the Great Lakes indicates that they can reduce the concentration of living organisms in ballast water discharge by 99%. *See* Bailey et al., *Efficacy of Ballast Water Management Systems Operating within the Great Lakes and St. Lawrence River (2017 – 2022)* (2023), Docket ID No. EPA-HQ-OW-2019-0482-0891.

EPA is responsible for regulating the discharge of pollutants from point sources into the navigable waters of the United States, which includes ballast water

5

discharge from vessels. *See Nw. Env't Advocs. v. U.S. Env't Prot. Agency*, 537 F.3d 1006, 1010 (9th Cir. 2008). Despite the clear language of the Clean Water Act, EPA had a longstanding policy of exempting ballast water from regulation, which the Ninth Circuit held to be *ultra vires*. *See id.* at 1027. EPA then began issuing Vessel General Permits, which regulated ballast water discharges. *See Final National Pollutant Discharge Elimination System (NPDES) General Permit for Discharges Incidental to the Normal Operation of a Vessel*, 73 Fed. Reg. 79,473 (Dec. 29, 2008); *Final National Pollutant Discharge Elimination System (NPDES) General Permit for Discharges Incidental to the Normal Operation of a Vessel*, 78 Fed. Reg. 21,938 (Apr. 12, 2013) ("2013 VGP").

The 2013 VGP contains major exemptions that conflict with the plain language of the Clean Water Act, including exempting Lakers built before 2009 from the ballast water numeric discharge standard. Petitioner NWF and other environmental groups challenged that exemption in the Second Circuit. *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 808 F.3d 556, 569–70 (2d Cir. 2015). The Second Circuit agreed with the petitioners that EPA's Laker exemption was arbitrary and capricious, but left the 2013 VGP in place while EPA worked to issue a new permit. *Id.* at 576–77, 584. EPA failed to issue any other VGPs. Consequently, the 2013 VGP will remain in place until the Coast Guard issues its VIDA implementing regulations. *See* 33 U.S.C. § 1322(p)(3)(A), (C). The Coast

6

Guard issued a compliance date extension for Lakers built after 2009, exempting them from complying with the 2013 VGP's numeric discharge standard. *See* 89 Fed. Reg. 82101–02. Thus, currently, Lakers discharge untreated ballast water, which may contain harmful invasive species, into the Great Lakes.

In 2018, Congress and President Trump directed EPA to promulgate standards of performance for ballast water discharges by passing VIDA and signing it into law. *See* 33 U.S.C. § 1322(p). VIDA explicitly directed EPA to promulgate standards of performance no later than December 4, 2020. *See* 33 U.S.C. § 1322(p)(4)(A)(i). Despite this clear Congressional mandate, the Trump administration EPA did not issue the Notice of Proposed Rulemaking until October 26, 2020. *See Vessel Incidental Discharge National Standards of Performance*, 85 Fed. Reg. 67,818 (Oct. 26, 2020).

EPA promulgated the Rule on October 9, 2024, almost four-years after the statutory deadline. *See Vessel Incidental Discharge National Standards of Performance*, 89 Fed. Reg. 82,074 (Oct. 9, 2024). The Rule establishes a numeric discharge standard for living organisms and in ballast water discharge, but exempts all existing Lakers from meeting that standard. 40 C.F.R. § 139.10(d)(3)(vi). Thus, the Rule's regulation of Laker discharges is even less stringent than the 2013 VGP. EPA's abeyance motion proposes a six-month delay to judicial review of the Rule, which is inadequate to protect the Great Lakes from the spread of invasive species.

# ARGUMENT

## I. Environmental Petitioners, Their Members, and the Health of the Great Lakes Would be Harmed by a Sixth-Month Abeyance.

Environmental Petitioners would be prejudiced by EPA's requested six-month abeyance, for it would further delay judicial resolution of the proper regulation of Lakers' ballast water discharges. Environmental Petitioners filed their Petition because the Rule ignores VIDA's mandate that the final standards of performance be no less stringent than the 2013 VGP, *see* 33 U.S.C. § 1322(p)(4)(D)(ii)(II), and EPA arbitrarily and capriciously determined that Lakers could not install BWMS's to reduce the concentration of living organisms in their ballast water discharge, *see* 89 Fed. Reg. 89094–95. A six-month abeyance of adjudication of Environmental Petitioners' Petition will delay EPA issuing revised standards of performance that comply with VIDA, delay U.S. Coast Guard's deadline to issue its implementing regulations,[2] and delay the effective date of the new standards of performance for Lakers.

Such delay would have major environmental consequences and could result in invasive species spreading throughout the Great Lakes. Under VIDA, EPA is required to promulgate standards of performance for invasive species based on the

---

[2] Under VIDA, the Rule (or any EPA revised standards of performance rule) does not become effective until the Coast Guard promulgates its implementing regulations, *see* 33 U.S.C. § 1322(p)(3)(A), (C), which it has two years to do. *See* 33 U.S.C. § 1322(p)(5)(A)(i).

8

"application of the best available technology economically achievable . . . which shall result in reasonable progress toward the national goal of eliminating discharges of all pollutants." 33 U.S.C. § 1322(p)(4)(B)(i)(III). The number of living organisms present in ballast water discharge is a key indicator of the likelihood that an invasive species will become established. *See* Economic Analysis of New Lakers at 21. Reducing the number of living organisms in Lakers' ballast water discharges will decrease the risk of invasive species establishment. *Id.* Delaying adjudication of this case will allow Lakers to continue discharging untreated ballast water for even longer.

Environmental Petitioners' members would be harmed by the spread of invasive species in the Great Lakes and already have seen firsthand the impacts that invasive species to the Great Lakes. *See* Appendix to Motion to Intervene. Members worry that EPA's failure in the Rule to regulate Lakers' ballast water will cause new invasive species to become established, reducing their ability to use the Great Lakes. *Id.* at A004, A009, A013–014, A017–018, A021, A028–29. Petitioner AGL member Timothy Frick lives in Michigan's Upper Peninsula, which heavily depends on tourism and fishing to sustain its economy and would suffer major economic hardship if a new invasive species became established in Lake Superior. *Id.* at A003–A004. Petitioner MEP's member Eric Goerdt runs Northern Waters Smokehaus, which depends upon native fish from Lake Superior

9

and his livelihood would be threatened by a newly established invasive species harming the native fish population. *Id.* at A012–014.

If EPA had complied with its Congressional mandate to issue final standards of performance by December 4, 2020, then any challenges to those standards would likely have been fully adjudicated by now and any revised EPA standards of performance would likely have been promulgated and effective. But, EPA's failure to timely promulgate final standards of performance has meant that Lakers' ballast water discharges have continued unregulated for a full decade after the Second Circuit found that EPA's regulation of Lakers under the 2013 VGP was arbitrary and capricious. By failing to issue a new VGP as instructed by the Second Circuit and failing to timely issue the standards of performance required by VIDA, EPA has prevented environmental organizations from having their day in court to demonstrate that the law requires EPA to regulate existing Lakers' ballast water discharges. This Court should not allow EPA to further delay judicial review, which is necessary to protect the health of the Great Lakes and prevent harm to Environmental Petitioners' members.

## II. EPA Failed to Meet Its Burden to Prove Abeyance Is Needed.

Because Environmental Petitioners have shown that they would be prejudiced by EPA's requested abeyance, EPA "bears the burden of establishing" the need for an abeyance, *see Clinton*, 520 U.S. at 708, and "must make out a clear

10

case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. EPA has not demonstrated that it would suffer hardship or inequity. This Court should use its discretion to deny EPA's abeyance request and prevent EPA from continuing its pattern of repeatedly delaying judicial review of its regulation of Lakers' ballast water discharges. *See Clinton*, 520 U.S. at 706.

### A. There Is No Hardship or Inequity to EPA from Proceeding, Given the Trump Administration's Extensive Involvement in the Rule.

The Rule is not new to the Trump administration. President Trump signed VIDA into law as part of the Frank LoBiondo Coast Guard Authorization Act of 2018. *See* Pub. L. 115–282, tit. IX, 132 Stat. 4192, 4322 (2018) (codified primarily at 33 U.S.C. § 1322(p)). The Notice of Proposed Rulemaking for this Rule issued under the first Trump administration. *See Vessel Incidental Discharge National Standards of Performance*, 85 Fed. Reg. 67,818 (Oct. 26, 2020). And, the Rule's exemption for existing Lakers from ballast water discharge regulation, which is the crux of what Environmental Petitioners' challenge in their Petition, was initially proposed by the first Trump administration EPA in its Notice of Proposed Rulemaking. *See* 85 Fed. Reg. 67845–51.

Even if the second Trump administration needed a short time to refamiliarize itself with the Rule, that would not justify a six-month abeyance. *See, e.g.*, *Asylumworks v. Mayorkas*, No. 20-CV-3815 (BAH), 2021 WL 2227335, at *6 (D.D.C. June 1, 2021) ("Finally, defendants urge a stay of these proceedings with

11

the invocation of 'new political leadership,' [and] 'the change in administration,' . . . as part of an argument that 'additional time is required to brief new leadership on the issues underlying this case' . . . . This reason, however, reflects only a pressing need for defendants to expedite briefing of incoming agency leadership and personnel, not a pressing need for a stay in this case."). EPA will have plenty of time to refamiliarize itself with the Rule over the course of the regular schedule for merits briefing of the consolidated Petitions. EPA should not be permitted to use the change to the second Trump administration to further delay review of a Rule that was promulgated almost four years after its statutory deadline.

### B. EPA's Theoretical Claim of Possible Reconsideration of the Rule Is Not Grounds for Abeyance.

The theoretical possibility raised by EPA that it may reconsider this Rule is no basis for a six-month abeyance, especially given that reconsideration would not resolve the central issue raised by Environmental Petitioners — EPA's failure to regulate ballast water discharges of existing Lakers.  EPA argues for a six-month abeyance claiming, "EPA *could* take further action that *may* obviate the need for judicial resolution of some or all of the disputed issues." EPA Abeyance Motion at 4 (emphasis added). But, this Circuit has been very clear that EPA cannot use new proposed rulemaking to stave off judicial review. *See Sierra Club v. U.S. Dep't of Transportation*, 125 F.4th 1170, 1180 (D.C. Cir. 2025). Here, EPA has not provided any evidence that it intends to actually reconsider or reissue the Rule,

12

making its argument entirely theoretical and an improper basis for granting EPA's requested abeyance. *See e.g.*, *Asylumworks*, 2021 WL 2227335, at *5.

Even if EPA were to reconsider the Rule, EPA has not identified that it would reconsider the Rule's exclusion of existing Lakers from ballast water discharge regulation. Thus, any such theoretical EPA reconsideration of the Rule would not resolve the legal issues raised by Environmental Petitioners. *See, e.g.*, Comment submitted by AGL, NWF, *et al*. (December 18, 2023), Docket ID No. EPA-HQ-OW-2019-0482-0913. Therefore, any hypothetical EPA reconsideration of the Rule would not obviate the need for judicial review of EPA's failure to regulate ballast water discharges by existing Lakers, which has been unresolved for close to a decade due to EPA's repeated delays. Also, issues of law and statutory interpretation are raised by Environmental Petitioners. *See, e.g.*, *id.* at 2–3. The Court should not delay fulfilling its constitutional role of determining how to properly construct VIDA. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385 (2024) ("it is emphatically the province and duty of the judicial department to say what the law is.").

### C. EPA Has Failed to Establish Need for an Abeyance.

The very orders that EPA cites in its motion underscore the irregularity of its six-month abeyance request here, and are distinguishable. EPA's cited court orders and corresponding abeyance motions all involve EPA requests for abeyance to

13

reconsider a regulation after the new administration issued an Executive Order specifically requesting the agency to reconsider the regulation at issue. *See* Doc. No. 1882301, *Am. Fuel & Petrochem. v. Env't Prot. Agency*, Case No. 19-1124 (D.C. Cir. Jan. 28, 2021) (citing Exec. Order No. 13,990, 86 Fed. Reg. 7,037 (Jan. 20, 2021)); Doc. No. 1670157, *Am. Petroleum Inst. v. Env't Prot. Agency*, Case No. 13-1108 (D.C. Cir. Apr. 07, 2017) (citing Exec. Order No. 13,783, 82 Fed. Reg. 16,093 (Mar. 28, 2017) at § 7); Doc. No. 1668274, *West Virginia v. Env't Prot. Agency*, Case No. 15-1363 (D.C. Cir. Mar. 28, 2017) (citing Exec. Order No. 13,783, 82 Fed. Reg. 16,093 (Mar. 28, 2017) at § 4). In this motion, however, EPA does not cite to an Executive Order directing it to review the Rule, because no such order exists. EPA completely failed to provide any concrete information that either the new EPA Administrator or President Trump intends to reconsider or reissue the Rule to support its theoretical assertion that it may reconsider the Rule. *See Asylumworks*, 2021 WL 2227335, at *5.

Further, in two of EPA's cited cases, EPA either requested or was granted a much shorter stay than the six-month abeyance EPA requests here. *See* Doc. No. 1882301, *Am. Fuel & Petrochem. v. Env't Prot. Agency*, Case No. 19-1124 (D.C. Cir. Jan. 28, 2021) (EPA requesting a 90-day abeyance); Doc. No. 1673071, *West Virginia v. Env't Prot. Agency*, Case No. 15-1363 (D.C. Cir. Apr. 28, 2017) (Court granting a 60-day abeyance). In the third case, the abeyance was for 30-days after

14

EPA reconsidered the rule, and required EPA to file status reports every 60-days, *see* Doc. No. 1675813, *Am. Petroleum Inst. v. Env't Prot. Agency*, Case No. 13-1108 (D.C. Cir. May 18, 2017). But, that case involved challenges to a Rule that EPA was expressly directed to reconsider under Executive Order 13,738, which is not the case here. *See* Doc. No. 1670157, *Am. Petroleum Inst. v. Env't Prot. Agency*, Case No. 13-1108 (D.C. Cir. Apr. 7, 2017). EPA has not cited any examples of a court granting it a six-month abeyance to potentially reconsider a rule that it has not been directed by the President to reconsider. Therefore, EPA has failed to meet its burden to demonstrate that its motion for a six-month abeyance is necessary here.

### III. EPA's Request to Delay Its Response to Environmental Petitioners' Motion to Intervene Should Be Rejected.

Environmental Petitioners filed their motion to intervene in the Lake Carriers' Association Petition prior to EPA's motion for an abeyance, and EPA should be required to timely respond. Under D.C. Circuit Rule 27(g)(4), if the Court denies EPA's extension request, EPA will have until 7 days after such order to file its response to Environmental Petitioners' motion to intervene. Environmental Petitioners would be receptive to a short extension of the deadline, but strongly oppose any extension based on the timing of the Court's decision on EPA's abeyance motion. For all the reasons stated above, an abeyance is inappropriate here, and the consolidated actions should proceed apace.

15

## CONCLUSION

For the foregoing reasons, Environmental Petitioners respectfully request that this Court deny EPA's motion for a six-month abeyance and deny EPA's requested extension to file its response to Environmental Petitioners' motion to intervene in Case No. 25-1027.

DATED: March 3, 2025                Respectfully submitted,

*/s/ Wendy Bloom*
Wendy Bloom
Nick Wallace
Elise Zaniker
Environmental Law & Policy Center
35 E Wacker Dr, Suite 1600
Chicago, IL 60601
(312) 795-3710
wbloom@elpc.org

*Attorneys for Petitioners Alliance for the Great Lakes, Environmental Law & Policy Center, Minnesota Environmental Partnership, and National Wildlife Federation*

Oday Salim
University of Michigan Law School, Environmental Law & Sustainability Clinic
701 South State Street
Ann Arbor, MI 48109
(734) 763-7087
osalim@umich.edu

*Attorney for Petitioner National Wildlife Federation*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing Response in Opposition to EPA's Motion to Hold Case in Abeyance and for Extension of Time contains 3,525 words excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f), in compliance with the word limit for motions and responses set forth in Federal Rule of Appellate Procedure 27(d)(2)(A). As permitted by Federal Rule of Appellate Procedure 32(g)(1), I have relied upon the word count feature of Microsoft Word in preparing this certificate. The foregoing response was composed in Times New Roman font, 14-point. As required by Federal Rule of Appellate Procedure 27(d)(1)(E), the response complies with the applicable typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6).

DATED: March 3, 2025            */s/ Wendy Bloom*
                                Wendy Bloom

# CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2025, the foregoing response was electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system, which will provide electronic notice to counsel of record for all parties in the consolidated action.

DATED: March 3, 2025            */s/ Wendy Bloom*
                                Wendy Bloom